### WICKES et al. v. LOCKWOOD et al.

#### (Circuit Court, D. Minnesota, Fourth Division. February 4, 1895.)

1. PATENTS—GANG-SAW MILLS—INFRINGEMENT.

    The Wickes patent, No. 215,526, for an improvement in gang-saw mills, consisting in a peculiar construction of a frame in combination with other parts, *held* to be infringed by the device of defendant Lockwood.

2. TESTIMONY—PRESUMPTION.

    The recollection of witnesses as to the details of a machine built 20 years before, unaccompanied by contemporaneous drawings or exhibits, *held* insufficient to overcome the presumption arising from the issuance of a patent.

Suit by Henry D. Wickes and others against J. E. Lockwood and others.

Offield, Towle & Linthicum, for complainants.

P. H. Gunckel (Robert H. Parkinson, of counsel), for defendants.

NELSON, District Judge. This suit is brought by complainants, manufacturers of sawmill machinery at East Saginaw, Mich., against defendants, carrying on the same business at Minneapolis, Minn., for an infringement of letters patent No. 215,526, issued to complainants February 18, 1879. The patent in question is for an improvement in gang-saw mills, and is as follows:

Henry D. Wickes and Edward N. Wickes, of East Saginaw, Mich.
Improvement in Gang-Saw Mills.

Specification forming part of letters patent No. 215,526, dated February 18, 1879. Application filed December 4, 1878.

To All Whom it may Concern: Be it known that we, H. D. Wickes and E. N. Wickes, of East Saginaw, in the county of Saginaw, and state of Michigan, have invented an improvement in gang-saw mills, of which the following is a specification:

The nature of our invention relates to new and useful improvements in that class of sawmills known as gang mills"; and the invention consists in the peculiar construction of the frame, by means of which greater stability to the general structure is obtained, and which admits of securing the base of the frame upon timbers independent from those ordinarily employed for supporting the main pillow blocks and crank shaft, thereby destroying the connecting vibrations produced from the heavy labor upon the main shaft which is sure to follow where the gang frame, pillow block, and main shaft rest upon the same base. The invention also consists in the new construction and combination of parts necessary to these beneficial results, and as more fully hereinafter described.

In the drawings, Fig. 1 is a perspective view of our improved gang-saw mill. Fig. 2 is a front elevation of the same. In the accompanying drawings, which form a part of this specification, A, A represent the vertical cheeks between which the gang saws have their reciprocating movement in guides of the usual construction. These cheeks are provided with shoulders, a, which rest upon shoulders, b, b, of the base, and to which they are rigidly secured. The vertical sections, c, of the cheeks, to which the lower guides are attached, project downward below the point of intersection between the upper and lower parts of the frame. B, B form the lower part of the frame, their upper ends being rigidly secured to, and coincident with, the shoulders upon the upper part of the frame; but these parts, B, B, are spread apart at their feet to give greater stability to the structure, and to avoid the necessity, as occurs in gang mills of ordinary construction, of being supported upon the same timbers which carry the pillow block, d, and main driving shaft, h. C, C, are the timbers upon which rests the improved gang-saw mill frame. D is the timber which

supports the pillow block and main shaft, which is subject to great vibrations, produced by the heavy labor required of the main shaft. In practice it is found that when the whole of the gang-saw mill frame is in vertical lines, one of the legs of said frame must rest upon the timbers, D. When so resting, the vibratory strain caused by the severe labor of the main shaft is communicated to the gang frame, to the serious detriment of its perfect and successful operation. By the construction herein described we are enabled to provide separate and independent foundations for the gang-saw frame and for the pillow block and shaft, so that the vibrations of the one will not affect the successful and perfect operations of the other. What we claim as our invention, and desire to secure by letters patent, is: The frame for gang-saw mills, described, consisting of the spreading base frames, B, B, having forked upper ends, terminating in bearing faces, b, b, and the parallel cheeks, A, A, provided with sections, C, carrying the lower guides, and projecting down between the forked ends of the base frames, said cheeks having shoulders, a, which rest upon and are secured to the bearing faces, b, b, constructed and arranged substantially as and for the purposes set forth.

Henry D. Wickes.<br>Edward N. Wickes.

Defendants' machine, as appears by their model, is almost identical with that of complainants. In the Wickes mill the upper cheek pieces in which the sash runs are parallel, and the spreading of the legs commences at the union of the upper and lower parts, while in the Lockwood machine the spread of the legs is uniform from top to bottom, and the guides for the sash, instead of being of uniform thickness, as in the Wickes machine, are made slightly beveling, in order to correspond with the spread of the legs, and present a vertical face in which the sash may run. These changes, it is clear, are merely in form, the results produced being precisely the same in both cases.

To my mind, the sole question for determination is as to the validity of complainants' patent, and, if it can be sustained, then the defendants are infringers. To sustain their claim, complainants introduced the patent, and supplement it with evidence showing that from 1870 to 1877 they built the old-style gang-saw mills, and since that time they have built exclusively, and without change of form, the machines described in their patent, and have nearly 300 of them in use at this time. They also show that after the issuance of the patent, when other manufacturers commenced to make gang-saw mills embodying complainants' devices, on being notified of the claims of the patent, they, with the exception of these defendants, desisted from such manufacture.

Defendants attack the validity of the patent, and seek to show prior use or anticipation, but they place their main reliance on the use in April, 1876, of what is called the "Torrent-Farr Mill." If the building and use of this mill, and its form as shown in the sketches, had been clearly and satisfactorily proved, and if the evidence had been of a more convincing and reliable character, I am inclined to think that the claim of complainants would have been defeated thereby. But the testimony is not of that clear and positive nature which is necessary to overcome the issuance of the patent, with the presumptions attaching thereto. It is based largely on the remembrance of witnesses as to the form and construction of a machine built nearly 20 years ago, subject to the infirmities of recollection,

and to the liability of mistake. Testimony of this character, without the production of contemporaneous drawings or exhibits, is, from its very nature, unreliable, and open to grave doubt. For these reasons I do not think it can be permitted to outweigh the evidence of the patent itself. Again, the patents cited as anticipations, in my opinion, do not come within the rule. The patent in question, if it is not merely an aggregation of parts,—as to which there may well be some doubt,—is for a combination of old devices to secure a better result than heretofore obtained; and, in order to prove prior use or anticipation, there must be shown a device using all these co-operative parts, or their mechanical equivalents, in one machine. I nowhere find an anticipation of the combination described in complainants' patent. It is a significant fact that the defendant firm or its predecessors built the old-style machines from 1870 to 1885, making none with iron frames until 1888 or 1889, and these latter machines did not infringe complainants' patent; subsequently, that pattern was discarded, and the one which is the subject-matter of this suit adopted. I hold, therefore, that complainants' patent is valid, and that defendants have infringed the same. A decree will be granted in accordance with the prayer in the bill of complaint, and the case will be referred to a master for an accounting.